**FILED**

**March 9, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.E., M.E.-1, M.E.-2, N.E., J.L., A.S., and C.L.**

**No. 21-0736** (Marion County 19-JA-157, 19-JA-158, 19-JA-159, 19-JA-160, 19-JA-161, 19-JA-162, and 19-JA-163)

## MEMORANDUM DECISION

Petitioner Mother B.E., by counsel Alex J. Harclerode, appeals the Circuit Court of Marion County's June 2, 2021, order terminating her parental rights to G.E., M.E.-1, M.E.-2, N.E., J.L., A.S., and C.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Ashley Joseph Smith, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that she received ineffective assistance of counsel which resulted in the termination of her parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner and the father physically abused the children by hitting them with sticks, belts, and other objects. The DHHR alleged that the parents also physically abused M.E.-1 who suffers from cerebral palsy. During the Child Protective Services ("CPS") investigation, M.E.-2 described the physical abuse

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children share the same initials, they will be referred to as M.E.-1 and M.E.-2, respectively, throughout this memorandum decision.

[2]Petitioner's counsel filed the brief pursuant to Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure.

1

the mother inflicted on the children to CPS workers. Several of the other children disclosed inappropriate punishment, such as being forced to stand for prolonged periods, eat off the floor, and perform excessive squats or pushups. Although not entirely clear from the record, it appears that petitioner was charged criminally for her conduct, as the order from the preliminary hearing indicates that petitioner's "bond conditions previously set in [her] criminal case[] . . . prohibit [her] from any contact with the infant respondents."

In February of 2020, petitioner stipulated to some of the allegations against her, including that she used excessive corporal punishment on the children and inflicted substantial mental and emotional injury on them. The court accepted petitioner's stipulation, adjudicated her of abusing and neglecting the children, and granted her a post-adjudicatory improvement period.

In April of 2020, the DHHR and the guardian jointly moved to revoke petitioner's improvement period, as her recent psychological evaluation found that "there is no indication that [petitioner] has truly and sincerely accepted responsibility for the abuse and neglect she perpetrated." According to the motion, petitioner recanted her stipulated admission during the evaluation and affirmatively denied that she ever abused or neglected the children. The evaluator further concluded that petitioner's "actions stem from her callused and sadistic personality traits and, to her, the behaviors are appropriate and justified." Further, the evaluator described the conditions in the home as "a work-camp environment in which the children's entire lives were impacted by physical, emotional[,] and psychological abuse at every turn." Based on petitioner's significant efforts to conceal the abuse in the home and frighten or coerce the children into concealing her actions, the evaluator had "grave concerns about retaliation by [petitioner] should the children return to [her] custody." These factors all contributed to the evaluator's conclusion that there were no services that could improve petitioner's parenting and that she "should never be left alone with these children." The court held hearings on this motion before ultimately revoking petitioner's improvement period by order entered in September of 2020.

In April of 2021, the circuit court held a dispositional hearing, during which the DHHR asked the court to take judicial notice of the testimony from the hearings on the motion to revoke petitioner's improvement period, which it did. The court then made findings regarding petitioner's statements during her psychological evaluation, including her extensive refusal to acknowledge any wrongdoing and her express recantation of her stipulation. The court also referenced testimony from the psychologist who evaluated petitioner in which she concluded that petitioner's prognosis for improved parenting was "extremely poor to non-existent." The court also addressed petitioner's claim that her statements from the evaluation were made in relation to a time prior to her adjudication. The psychologist made it clear, however, that she was "asking [petitioner's] acknowledgement as she sat with her at the time of the evaluation." Based on this evidence, the court found that petitioner took no responsibility for her actions that led to the petition's filing and that the DHHR could not fix a problem that petitioner would not acknowledge. The court then found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was

2

in the children's best interests. As such, the court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises only a single assignment of error in which she asserts that she received ineffective assistance of counsel. According to petitioner, she attempted to contact her attorney[4] several times in the period between the filing of the joint motion to revoke her improvement period and the hearing on that motion so that she could obtain a copy of the evaluation and help counsel prepare questions for the evaluator. Petitioner alleges that, despite these efforts, she was only able to meet with counsel for a few minutes prior to the hearing, and, as a result, her improvement period was revoked. The crux of petitioner's argument is that the psychologist's report contained inaccuracies and that counsel could have addressed these inaccuracies through cross-examination if not for his ineffective representation. We find, however, that this argument does not entitle petitioner to relief.

First, it is important to note that this Court has never recognized a claim of ineffective assistance of counsel in the context of abuse and neglect proceedings, and we decline to do so here. Even more importantly, petitioner provides no evidence for her unsupported claims that she attempted to contact her attorney and that he would not or could not speak with her in preparation for the hearing. This is in contradiction to Rule 10(c)(7) of the Rules of Appellate Procedure, which requires that a brief "must contain appropriate and specific citations to the record on appeal" and permits the Court to "disregard errors that are not adequately supported by specific references to

---

[3]The court did not terminate petitioner's parental rights to C.L., as C.L. reached the age of majority prior to the dispositional hearing. The father's rights were also terminated below. The permanency plan for G.E., M.E.-1, and M.E.-2 is adoption in their respective foster homes. The permanency plan for N.E., J.L., and A.S. is legal guardianship in the current foster homes.

[4]During the relevant time period, petitioner had different representation than on appeal in the current matter.

the record on appeal." Finally, it is unclear what alleged inaccuracies the psychological report contained, given that petitioner fails to include any specific examples in her brief before this Court. As such, petitioner cannot be entitled to relief.

Ultimately, we find no error in the circuit court's termination of petitioner's parental rights. As this Court has explained,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Because petitioner refused to acknowledge the conditions of abuse and neglect, the court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. As we have directed,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 2, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: March 9, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment